UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL ALLEN SMITH,<br><br>      Petitioner,<br><br>  v.<br><br>MELISSA ANDREWJESKI,<br><br>      Respondent. | CASE NO. 3:23-cv-05132-TSZ-GJL<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: September 1, 2023 |

  The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge Grady J. Leupold. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254, challenging his convictions for indecent liberties with forcible compulsion and residential burglary with sexual motivation. Dkt. 4. After a review of the relevant record, the Court concludes the state courts' adjudication of the grounds presented in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary. The Court recommends the petition

REPORT AND RECOMMENDATION - 1

be **DISMISSED with prejudice** and further recommends a certificate of appealability not be issued.

## I.     BACKGROUND

**A.     Factual Background**

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> HK lived in Vancouver with her boyfriend Corey Jones. [Petitioner] and Jones were coworkers and close friends. The two men would hang out almost daily and it was normal for [Petitioner] to show up at the home unannounced to visit Jones.
>
> Around 8:00 PM on November 17, 2017, [Petitioner] visited HK and Jones's house. [Petitioner] entered without knocking, which was common for him to do. HK was home alone. [Petitioner] appeared intoxicated and did not leave when he learned Jones was not there.
>
> [Petitioner] playfully started to wrestle with HK. HK told [Petitioner] to stop, but he became angry and tackled her to the ground. While HK tried to fight [Petitioner] off, he straddled HK's body, grabbed her breasts and vagina, and tried to penetrate her vagina with his fingers. HK screamed for [Petitioner] to get off her and told him to get out of her house. [Petitioner] continued to grab at HK, but HK eventually broke free. HK again yelled at [Petitioner] to leave her house. [Petitioner] left.
>
> The State charged [Petitioner] with residential burglary with sexual motivation and indecent liberties with forcible compulsion.
>
> …
>
> The jury found [Petitioner] guilty of residential burglary with sexual motivation and indecent liberties with forcible compulsion.

Dkt. 9-1 at 26–27.

The state court of appeals also summarized the following additional background regarding trial issues raised by Petitioner:

> On cross examination, [Petitioner] sought to elicit testimony from HK that she was thinking about leaving her relationship with [her boyfriend] Jones because he was partying and not coming home. [Petitioner] argued that this testimony would be relevant support for a motive for HK to fabricate her allegations against [Petitioner] because of the possibility that Jones would believe that the incident with [Petitioner] was some type of cheating encounter. The trial court ruled that the

evidence was inadmissible, stating that the evidence had no probative value regarding HK's motive or potential bias.

…

During her rebuttal argument, the prosecutor stated:

At the end of the day if you believe beyond a reasonable doubt that this happened, that the defendant sexually assaulted [HK] refusing to leave, and nothing that defense counsel says shakes your abiding belief in that, your abiding belief in the charges, then that's it.

RP at 357 (emphasis added). [Petitioner] did not object to this statement.

Dkt. 9-1 at 38, 39.

**B.      Procedural History**

   1.      State Court Procedural History

On May 15, 2019, Petitioner was sentenced to 84 months' confinement, with an 18-month enhancement, for indecent liberties with forcible compulsion and residential burglary with sexual motivation. Dkt. 9-1 at 2–23 (Ex. 1). Petitioner's counsel filed a direct appeal to the state court of appeals. *Id*. at 48–81 (Ex. 3). The claims raised on direct appeal that are relevant to this Petition alleged (1) the trial court erroneously excluded impeachment evidence of the victim's relationship troubles, and (2) the prosecutor's closing argument improperly shifted the burden of proof. *Id*. Petitioner also filed a *pro se* Personal Restraint Petition ("First PRP") raising claims not at issue here, which was consolidated with the direct appeal. Dkt. 9-1 at 176 (Ex. 6). The Court of Appeals, in a partially reported decision,[1] affirmed the convictions, but remanded to strike an interest accrual provision in the sentence. Dkt. 9-1 at 25–46 (Ex. 2).

Petitioner, through counsel, sought review by the Washington Supreme Court ("state supreme court"). Dkt. 9-1 at 184–231 (Ex. 8). As relevant to this matter, the petition sought

---

[1] The claims at issue here are addressed in the unreported portion of the state court of appeals' opinion. Dkt. 9-1 at 9–14 (Ex. 2).

review of (1) the trial court's exclusion of impeachment evidence, and (2) prosecutorial misconduct during closing argument that improperly shifted the burden of proof. *Id*. The state supreme court denied the petition for review without comment on September 1, 2021. Dkt. 9-1 at 241 (Ex. 10). The state court of appeals issued its mandate on September 13, 2021. Dkt. 9-1 at 243 (Ex. 11).

Petitioner filed a second *pro se* Personal Restraint Petition ("Second PRP") on August 10, 2022. Dkt. 9-1 at 246–321 (Ex. 12). The Second PRP raised the following grounds relevant to this matter: (1) the trial judge failed to dismiss *sua sponte* a biased juror, and (2) the prosecutor engaged in misconduct by referring to the crime of rape during closing argument. *Id*. The Second PRP was transferred to the state supreme court, and the Deputy Commissioner issued a written order dismissing the petition. Dkt. 9-1 at 324 (Ex. 13), Dkt. 9-1 at 327–330 (Ex. 14). Petitioner moved to modify, and the state supreme court denied the motion. Dkt. 9-1 at 333–348 (Ex. 15); Dkt. 9-1 at 351 (Ex. 16). The state court of appeals issued a certificate of finality on December 12, 2022. Dkt. 9-1 at 353 (Ex. 17).

2.     Federal Habeas Petition

On February 17, 2023, Petitioner filed his federal habeas Petition in this Court. Dkt. 4. The Petition raises four grounds:

1. The trial court erred in excluding relevant defense evidence concerning the credibility of the victim.

2. Petitioner was denied his right to a fair trial when the prosecutor improperly shifted the burden of proof during closing argument.

3. The trial court erred in failing *sua sponte* to dismiss a prospective juror for actual bias.

4. The prosecutor committed misconduct when she repeatedly referred to Petitioner's crime as a rape during closing argument.

Dkt. 4 at 5, 7, 8, 10.

REPORT AND RECOMMENDATION - 4

1   Respondent filed her Response and the relevant portions of the state court record on April
2   18, 2023. Dkts. 8, 9. After the Court granted a requested extension, Petitioner filed his traverse
3   on July 5, 2023. Dkt. 13. Respondent has not filed an optional reply.

## II.   DISCUSSION

### A.   Exhaustion

Respondent concedes Petitioner properly exhausted Grounds 3 and 4. Respondent contends, however, that Petitioner has not properly exhausted Grounds 1 and 2 because he did not raise them as federal constitutional violations before the state supreme court. Dkt. 8 at 7–8. Petitioner contends he fairly presented the claims to the state appellate courts as violations of his federal constitutional rights. Dkt. 13 at 3–5.

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Moreover, a federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). Petitioner must therefore include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162–163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

1    The record shows that Petitioner raised each of the grounds presented here at each level
2 of state court review. Moreover, the record also demonstrates that Petitioner sufficiently
3 presented his claims to the state court of appeals as federal claims. Indeed, the state court of
4 appeals expressly referred to the Sixth and Fourteenth Amendments in its discussion. Dkt. 9-1 at
5 40 (Ex. 2). Respondent does not contend otherwise, but argues Petitioner did not properly
6 exhaust because he failed to cite federal law at the next level of review, before the state supreme
7 court. Dkt. 8 at 8.

8    Here, the state court of appeals decision that was presented to the state supreme court for
9 review discussed federal constitutional law, even if Petitioner's briefing did not expressly do so.
10 Dkt. 9-1 at 40. It therefore appears the state supreme court would have had sufficient notice of
11 Petitioner's federal constitutional claims. But the Court need not determine whether this is
12 sufficient to constitute proper exhaustion, because both parties have also briefed the merits of
13 Grounds 1 and 2 and "an application for a writ of habeas corpus may be denied on the merits,
14 notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the
15 State." 28 U.S.C. § 2254(b)(2). *See also Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir.
16 2002) (even if a Petitioner has failed to exhaust state remedies, the Court may proceed to the
17 merits of clearly unmeritorious claims).

18 **B.    Merits Review**

19    Respondent maintains the state courts' adjudication of each of the grounds raised in the
20 Petition was not contrary to, or an unreasonable application of, clearly established federal law.
21 Dkt. 8.

22    1.    Standard of Review

23    Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the
24 basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

Habeas relief may also be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual

1  findings unless applicants rebut this presumption with "clear and convincing evidence." 28
2  U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the
3  record that was before the state court that adjudicated the claim on the merits." *Cullen v.*
4  *Pinholster*, 563 U.S. 170, 180–81 (2011).

   2. <u>Exclusion of Impeachment Evidence (Ground 1)</u>

6   Petitioner argues the trial court erred in excluding impeachment evidence regarding the
7  victim's problems with her relationship with her boyfriend, which Petitioner argues would have
8  undermined her credibility. Dkt. 4 at 5. Respondent contends the state court of appeals
9  reasonably rejected the claim because the evidence was properly excluded. Dkt. 8 at 14–16.
10  The "main and essential purpose of confrontation is *to secure for the opponent the*
11 *opportunity of cross-examination.*" *Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986)
12 (emphasis in original, internal quotation marks omitted). "Cross-examination is the principal
13 means by which the believability of a witness and the truth of his testimony are tested [, allowing
14 the cross-examiner] . . . to delve into the witness' story to test the witness' perceptions and
15 memory . . . [and] to impeach, i.e., discredit, the witness." *Davis v. Alaska,* 415 U.S. 308, 316
16 (1974). But the Supreme Court has repeatedly emphasized that the right is limited to the
17 guarantee of "an *opportunity* for effective cross-examination, not cross-examination that is
18 effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall,* 475
19 U.S. at 679 (internal quotation marks omitted). Accordingly, "trial judges retain wide latitude
20 insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-
21 examination based on concerns about, among other things, harassment, prejudice, confusion of
22 the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*.
23  Generally speaking, a court violates the Confrontation Clause only when it prevents a
24 defendant from examining a particular and relevant topic, such as bias. "The Supreme Court

consistently has held a Confrontation Clause violation occurs when a trial judge prohibits *any* inquiry into why a witness may be biased. However, when some inquiry is permitted, trial judges retain wide latitude to impose reasonable limits on such cross-examination. No Confrontation Clause violation occurs as long as the jury receives sufficient information to appraise the biases and motivations of the witness." *Hayes v. Ayers,* 632 F.3d 500, 518 (9th Cir. 2011) (internal quotation marks, citations, and ellipsis omitted). "Only rarely ha[s the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

On federal habeas review, even if an error of constitutional dimension is established, a petitioner is entitled to relief only if he can demonstrate that the error resulted in actual prejudice. *Davis v. Ayala*, 576 U.S. 257, 269–70 (2015); *Brecht*, 507 U.S. at 637–38 (1993). This standard is satisfied if the record raises "grave doubt[s]" about whether the error influenced the jury's decision. *Ayala*, 576 U.S. at 276 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

The state court of appeals rejected petitioner's claim, holding that the limits on cross-examination were proper:

> At trial, [Petitioner] sought to elicit testimony from HK that she was thinking about leaving her relationship with Jones because he was partying and not coming home. [Petitioner] argues that this evidence was relevant to show a motive for HK to fabricate her allegations against him to avoid further conflict with Jones or because she knew that Jones would accuse her of cheating with [Petitioner].
>
> However, [Petitioner]'s argument that the fact that HK was thinking about leaving Jones because of his behavior gave her a motive to fabricate does not make sense. [Petitioner] does not explain why HK's concerns about her relationship with Jones would cause her to fabricate allegations against [Petitioner]. The evidence [Petitioner] sought to elicit simply is not relevant as impeachment evidence.
>
> [Petitioner] references Stamper's testimony that Jones accused HK of cheating. However, [Petitioner]'s offer of proof did not include asking HK whether Jones had accused her of cheating. In any event, evidence regarding HK's relationship troubles were not excluded completely – Jones'[] accusation of cheating was

>admitted into evidence through Stamper. Therefore, [Petitioner] was free to argue the fabrication theory he presents on appeal.
>
>We conclude that the trial court did not abuse its discretion in finding that the proffered evidence regarding HK's relationship troubles was not relevant. In addition, we find no constitutional violation. Accordingly, we hold that the trial court did not violate [Petitioner]'s constitutional right to present a defense.

Dkt. 9-1 at 41–42 (Ex. 2).

The state court of appeals did not unreasonably apply clearly established federal law. Petitioner argues the evidence he sought to introduce would supply a motive for the victim to fabricate her allegations of sexual assault. Dkt. 4 at 5. In particular, Petitioner contends that evidence the victim's boyfriend accused her of cheating was relevant to the credibility of her accusations. *Id*. But, as the state court of appeals noted, counsel's offer of proof asked only whether the victim was considering leaving the relationship due to her boyfriend's partying and not coming home; it did not address accusations of cheating. *See* Dkt. 9-1 at 540 (Ex. 18).

The trial court found that evidence of tension related to the boyfriend's partying was not probative of a motive to fabricate—and raised "lots of potential prejudicial value and an issue for jury confusion." *Id*. at 544. The state court of appeals reasonably found the trial court's relevance determination did not violate Petitioner's right to present a defense, because the relationship tensions were simply not relevant to any motive to fabricate allegations against Petitioner.

But even if the Court had excluded the evidence in error, Petitioner cannot meet his burden under *Brecht* to show that the preclusion of the evidence substantially influenced the verdict. *See Brecht*, 507 U.S. at 638–39. Indeed, Petitioner was able to introduce evidence through another witness that there were tensions in the victim's relationship with her boyfriend, and that the boyfriend had accused her of cheating. Dkt. 9-1 at 643. Defense counsel relied on that testimony to question the victim's credibility, suggesting during closing argument that Petitioner's motive for reporting the assault to the police was to prove to her boyfriend that she

was not cheating. *Id*. at 704. Thus, Petitioner was able to present his theory that the boyfriend's cheating accusations had motivated the victim to make a fabricated report of sexual assault. As Petitioner was fully able to present his fabrication theory, he cannot establish prejudice. *See Hayes*, 632 F.3d at 518 ("No Confrontation Clause violation occurs as long as the jury receives sufficient information to appraise the biases and motivations of the witness.").

The state court's determination that the exclusion of relationship tension evidence did not violate Petitioner's Sixth Amendment rights was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court recommends that Ground 1 be denied.

### 3. Trial Court's Failure to Dismiss Juror *Sua Sponte* (Ground 3)

Petitioner argues that the trial court should have dismissed Juror No. 17 *sua sponte* because her answer to a *voir dire* question about the "me too" movement demonstrated bias. Dkt. 4 at 8. Respondent contends the Deputy Commissioner applied proper deference to the trial judge and reasonably determined the trial court was not required to dismiss the juror for cause. Dkt. 8 at 19–22.

Trial by an impartial jury is fundamental to the fair administration of criminal justice. *Turner v. Stae of La.*, 379 U.S. 466, 472–73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An impartial jury is one that is composed of "jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). A juror is considered impartial under the Sixth Amendment standard if the juror can set aside any opinion he or she might hold and decide the case solely on the evidence presented at trial. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it.").

1    Upon habeas review, determinations as to individual juror bias are factual questions entitled to the presumption of correctness. *Witt,* 469 U.S. 412. *See also Darden v. Wainwright,* 477 U.S. 168, 175 (1986); *Patton,* 467 U.S. 1025 (finding that impartiality of individual jurors is a question of fact). "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown,* 551 U.S. 1, 9 (2007). A petitioner must rebut such a finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Deputy Commissioner rejected Petitioner's claim of juror bias, explaining his conclusion as follows:

> Here, the prosecutor asked prospective jurors generally if they had strong feelings one way or the other about the "Me Too" movement. Juror 17 indicated no feelings about that movement specifically but revealed having worked for years with children in the foster care system, where many children are victims of sexual abuse, explaining, "so I have very strong feelings about their condition as I work with them, and so I have a lot of emotional response to that." 1 Verbatim Report of Proceedings (1 VRP) at 92.2 Asked if this feeling would cause any problem in this case, the juror acknowledged being unable to say for certain and pointed out that people are emotional beings who see things through the perspective of their own experiences, but the juror also expressed a desire "to be fair" and "to listen to the evidence" and was "willing to listen to the evidence and base my decisions on how I see things that way." *Id*. at 93. Plainly, the juror expressed no state of mind that demonstrated an inability to try the case impartially, and to the extent the juror had preconceived ideas (which the juror acknowledged all people have), the juror expressed willingness to set aside those ideas and decide the case on the basis of the evidence. The trial court had no cause to excuse the juror on its own.

Dkt. 9-1 at 328–29 (Ex. 14).

Although Petitioner's counsel requested (and the trial court granted) the dismissal of three other jurors for cause after questioning them, he did not seek dismissal of Juror 17 after questioning her regarding her feelings about the "me too" movement. Dkt. 9-1 at 447 (Ex. 18). Nor did counsel exercise a peremptory challenge against Juror 17. *Id*. at 462 (Juror 17 seated

after peremptory challenge process). Instead, Petitioner argues the Court should have made a *sua sponte* decision to the dismiss the juror for bias even though his counsel did not make such a request. Dkt. 4 at 8.

The United States Supreme Court has not established a rule requiring that a trial court has an obligation to dismiss jurors *sua sponte* for cause. *See Washington v. Thaler*, 714 F.3d 352, 354–55 (5th Cir.); *Cage v. McCaughtry*, 305 F.3d 625, 626–27 (7th Cir 2002). Here, the record demonstrates that defense counsel did not seek the dismissal of Juror 17. In the absence of any decision of the United States Supreme Court clearly supporting Petitioner's claim that the trial judge had an obligation to dismiss the juror *sua sponte*, the state court's adjudication of the claim cannot be deemed contrary to any clearly established federal law. *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004).

Moreover, the Court must defer to the trial court who actually observed the juror and made the determination about her bias. *See United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995), *as amended on denial of reh'g* (Apr. 11, 1995). Here, as the Deputy Commissioner noted, the juror expressed her intent to listen to the evidence and to be fair, and to the extent her experiences might affect her views, she stated she would decide the case based on the evidence. Dkt. 9-1 at 447. Petitioner has provided no basis to forego deference to the trial court's acceptance of the juror.

The state courts reasonably applied clearly established federal law. Accordingly, the Court recommends that Ground 3 be denied.

    4.  <u>Prosecutorial Misconduct During Closing Argument (Grounds 2 and 4)</u>

Petitioner contends the prosecutor engaged in misconduct during closing argument by (1) misstating the burden of proof, and (2) incorrectly referring to Petitioner's crime as "rape." Dkt.

4 at 7, 10. Respondent argues the state courts reasonably applied clearly established federal law in dismissing Petitioner's claims. Dkt. 8 at 18–19.

In determining whether argument rises to the level of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*Darden* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is presumed to be harmless unless the error had "substantial or injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

To determine whether a due process violation occurred, the court "must consider the probable effect of the prosecutor's [comments] on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). To do so, the prosecutor's remarks must be viewed in context. *See Boyde v. California,* 494 U.S. 370, 385 (1990); *United States v. Robinson,* 485 U.S. 25, 33–34 (1988); *Williams v. Borg,* 139 F.3d 737, 745 (9th Cir. 1998). The Court may consider whether the prosecutor's comments manipulated or misstated the evidence, whether the trial court gave a curative instruction, and the weight of the evidence against the accused. *Darden*, 477 U.S. at 181–82.

Closing arguments are not evidence and ordinarily carry less weight with the jury than the court's instructions. *Boyde*, 494 U.S. at 384; *Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999). Prosecutorial argument should not result in reversal where the trial court instructed the jury that its decision is to be based solely upon the evidence, where the defense did not object, where the comments were an "invited response," or where there is overwhelming evidence of

guilt. *Darden*, 477 U.S. at 182; *Donnelly v. DeChristoforo*, 416 U.S. 637, 640–45 (1974); *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993); *Hall v. Whitley*, 935 F.2d 164, 165–66 (9th Cir. 1991).

### a. Burden of Proof (Ground 2)

Petitioner claims the prosecutor improperly shifted the burden of proof when she stated in closing argument:

> At the end of the day if you believe beyond a reasonable doubt that this happened, that the defendant sexually assaulted [HK] refusing to leave, *and nothing that defense counsel says shakes your abiding belief in that, your abiding belief in the charges, then that's it.*

Dkt. 9-1 at 713 (Ex. 19) (emphasis added).

The state court of appeals held Petitioner had failed to show misconduct:

> [Petitioner] argues that this statement undermined the presumption of innocence and improperly shifted the burden of proof to the defense to supply a basis for reasonable doubt. However, [Petitioner] failed to object to the prosecutor's statement. Therefore, the question is whether the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.
>
> [Petitioner] argues that the prosecutor's argument could not have been cured by a proper instruction because it was made at the end of the State's rebuttal and immediately before jury deliberations. [Footnote omitted.] But the trial court properly instructed the jury on the presumption of innocence and reasonable doubt standard before closing argument. If [Petitioner] had objected, the trial court could have simply referred the jury to that instruction and reminded the jury that argument inconsistent with the instructions should be disregarded. Also, we note that the prosecutor properly articulated the burden of proof on multiple occasions elsewhere in her closing argument.

Dkt. 9-1 at 43.

As the state court of appeals noted, Petitioner did not object to the statement he now claims was improper. Furthermore, the full context of the prosecutor's closing argument and rebuttal emphasizes multiple times that the State bore the burden of proof. *See* Dkt. 9-1 at 684 ("As the prosecutor, . . . it is my burden to prove all of the elements of each of the crimes beyond

a reasonable doubt."); *Id.* at 694 ("I had to prove this case to you, the charges, beyond a reasonable doubt."); *Id.* at 709–10 ("what I say, what counsel says is not evidence."); *id.* at 710 ("There is one thing that counsel and I agree on, that justice requires that I prove these charges beyond a reasonable doubt."). Far from attempting to shift the burden of proof, the prosecutor's closing arguments emphasized its placement on the State.

Moreover, an attorney's comments do not warrant reversal if the court has properly instructed the jury to rely only on the evidence at trial when rendering its verdict. *Darden*, 477 U.S. at 182. Here, the court provided the jury with an instruction before they went into deliberations, exhorting them to rely only on the evidence presented at trial, emphasizing that the State bore the burden of proof beyond a reasonable doubt, and reminding jurors that counsels' comments are not evidence. Dkt. 9-1 at 675, 677 (Ex. 19).

Even if the single statement to which Petitioner objects could be deemed erroneous, in light of the overwhelming emphasis by both the prosecutor and the trial court on the proper burden of proof, Petitioner cannot establish a "substantial or injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

The state courts did not unreasonably apply established federal law in rejecting petitioner's claim. The Court therefore recommends that Ground 2 be denied.

            b.     *References to "Rape" (Ground 4)*

Petitioner argues the prosecutor committed misconduct during closing argument when she "repeatedly referred to [Petitioner's] crime as a rape during closing arguments." Dkt. 4 at 10. Petitioner contends that, in light of the lack of evidence of penetration, it was misconduct and presented facts not in evidence to refer to the crime as "rape" during closing argument. *Id.*[2]

---

[2] Petitioner's Traverse appears to shift his argument to assert that the prosecutor's explanation of apparent inconsistencies in the victim's testimony constituted "vouching" for her credibility. Dkt. 13 at 14. But Petitioner

1    Respondent argues the state court reasonably determined Petitioner had not shown misconduct or
2    prejudice. Dkt. 8 at 19.
3          In holding the prosecutor did not commit misconduct when making references to rape,
4    the Deputy Commissioner held as follows:

> [Petitioner] next contends that the prosecutor committed misconduct in closing argument by bringing up the victim's characterization of the criminal incident to another person as a "rape," urging that the prosecutor improperly argued facts not in evidence (there was no evidence of penetration that would qualify as rape). But clearly what the prosecutor was trying to do (and she said so explicitly) was to head off any attack by defense counsel on the victim's credibility on the basis of her reference to the incident as a rape and her initial description (later retracted) of [Petitioner] putting his fingers inside her. The prosecutor explained that the victim, viewing the incident as an attempt to forcibly have sex, in which [Petitioner] tried but failed to put his fingers inside, could have reasonably viewed the incident as a "rape-like situation" and characterized it as a rape because it felt like that to the victim. 2 VRP at 335-36. [Petitioner] did not object to these remarks when they were made, and therefore he waived any objection unless the remarks were so flagrant and ill-intentioned as to be incurable by an objection and correcting instruction. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). The prosecutor's remarks do not rise to this level and indeed do not constitute misconduct at all in the context in which they were made. *See id.* (allegedly improper comments viewed in the context of the entire argument). And even if [Petitioner] preserved his objection and showed the remarks were improper, he would have to show prejudice in the sense there is a substantial likelihood the misconduct affected the verdict. *Id.* Smith does not make this showing.

Dkt. 9-1 at 329 (Ex. 14).

      The state court did not unreasonably apply clearly established federal law in dismissing Petitioner's claim. First, Petitioner has not established the prosecutor's argument was improper, when taken in context of the entire argument. As the record demonstrates (and the Deputy Commissioner held), the prosecutor did not argue Petitioner was guilty of the crime of rape, but

---

presented this claim to the state courts as offering facts not in evidence, not as a claim for improper vouching—and therefore has not exhausted a vouching claim. *See* Dkt. 9-1 at 259–266. Moreover, the prosecutor's argument did not express her personal views of the victim's credibility. *See United States v. Necoechea,* 986 F.2d 1273, 1279 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993) ("It is not vouching, however, for the prosecutor to argue about the truthfulness of a witness's statements based upon evidence in the record, provided that the statements do not imply that the prosecution is personally assuring the witness's veracity or reflect the prosecutor's personal beliefs.").

REPORT AND RECOMMENDATION - 17

instead explained that the victim's initial inaccurate descriptions of the conduct as rape and/or penetration were not inconsistent with her later testimony that there had not been actual penetration. Dkt. 9-1 at (Ex. 18). Far from mischaracterizing the crime as rape, the argument accepted that it was not, but explained (based upon the victim's testimony) why the victim might have initially misunderstood the legal distinction. *Id*. Moreover, the prosecutor's argument is clear that the actual crimes charged were indecent liberties and residential burglary with sexual motivation. Dkt. 9-1 at 684, 686–688.

Second, Petitioner did not object to the argument—and as the jury instructions clearly set forth the elements of the crimes that were actually charged, Petitioner cannot show a "substantial or injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

The Deputy Commissioner did not unreasonably apply clearly established federal law in denying Petitioner's claim that the prosecutor engaged in misconduct by referring to the victim's initial reports of "rape" during closing argument. The Court therefore recommends that Ground 4 be denied.

### III.   EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's grounds may be resolved on the existing state court record.

## IV. CERTIFICATE OF APPEALABILITY

Petitioners seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## V. CONCLUSION

For the reasons stated above, the Court concludes Petitioner has not shown the state courts' adjudication of the grounds raised in the Petition was contrary to, or an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary. Therefore, the Court recommends that the Petition be **DISMISSED with prejudice** and that a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on September 1, 2023, as noted in the caption.

Dated this 16th day of August, 2023.

Grady J. Leupold
United States Magistrate Judge